# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs May 4, 2010

## STATE OF TENNESSEE v. RICKY FRITH

### Direct Appeal from the Circuit Court for Tipton County
### No. 6116    Joseph H. Walker, III, Judge

---

### No. W2009-02034-CCA-R3-CD   -   Filed May 17, 2010

---

The defendant, Ricky Frith, was convicted by a Tipton County Circuit Court jury of burglary of a vehicle, a Class E felony, and was sentenced by the trial court as a career offender to six years in the Department of Correction. The sole issue the defendant raises on appeal is whether the evidence was sufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ALAN E. GLENN, J., delivered the opinion of the Court, in which J.C. MCLIN and D. KELLY THOMAS, JR., JJ., joined.

Gary F. Antrican, District Public Defender (on appeal) and Jeff Lee, Assistant Public Defender (at trial), for the appellant, Ricky Frith.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr. and P. Neal Oldham, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

At approximately 10:00 p.m. on December 16, 2007, the victim, Gary Madison, was inside his Tipton County home with his 1993 Chevrolet Silverado pickup truck parked outside when his girlfriend alerted him that someone was trying to steal the vehicle. Upon investigation, the victim discovered the defendant inside the truck, apprehended him, and held him at gunpoint for approximately thirty to forty-five minutes while he waited for the

police. The defendant eventually ran off before the police arrived, but both the victim and his girlfriend later identified him from photographic lineups they were separately shown by the police. As a result, the defendant was subsequently indicted by the Tipton County Grand Jury for the burglary of the victim's vehicle.

The State's first witness at the defendant's May 7, 2009, trial was the victim's girlfriend, Tresha Jones, who testified that she and the victim were in their home at approximately 10:00 p.m. on December 16, 2007, when she heard her dogs barking, looked out the window, and saw that the headlights of the victim's pickup truck were on. She told the victim that someone was trying to steal his truck, and he reacted by getting his gun and running outside. After calling 911, she went outside as well, where she encountered the victim walking the defendant toward the driveway.

Jones testified that she and the victim stood outside with the defendant for approximately thirty to forty-five minutes while they waited for the police to arrive. The defendant was within three or four feet of her during that time and, for the most part, was standing or walking in front of the truck illuminated by its headlights. She repeatedly told him to get on the ground, but he refused to comply and eventually ran off before the police arrived. The defendant was dressed in a black "Intimidator" jacket and jeans, was possibly wearing a hat, and at one point held a screwdriver that he pulled from his pocket.

Jones testified that during the time she and the victim were holding the defendant at gunpoint, another man dressed in jeans and a camouflage jacket walked down the street, coming within twenty to twenty-five feet of her location. She said she called out to ask him who he was and to accuse him of being involved, but he denied any involvement and kept walking. Jones made a positive courtroom identification of the defendant as the man she and the victim had held at gunpoint and identified from a photograph the man who had walked past in the camouflage jacket as Jimmy Lee Arnold, Jr.

Jones acknowledged on cross-examination that she did not provide a description of the suspect's facial features in her statement to police on the night of the incident. She explained, however, that she thought a description of the suspect's clothing would be of more benefit under the circumstances, with the officers searching for a suspect on a dark road at night. She further testified that she identified the defendant in a photographic lineup she was shown by the police approximately one week after the incident. When asked, she said that the defendant looked slightly different on December 16 than in the photograph, in that his hair was shorter and she did not recall his having as much facial hair.

On redirect examination, Jones testified that she and the victim were shown the photographic lineups separately and did not communicate with each other about their respective identifications. She also expressed her certainty about her identification of the

defendant as the perpetrator.

The victim testified that when his girlfriend told him that his truck's headlights were on, he put on his shoes, got his gun, and immediately went outside to his truck, where he found frost on the windshield and the engine running. He said he ran to the driver's side of the vehicle and rapped several times on the window, telling the defendant to get out. The defendant instead tried to take off in the truck, but the diesel engine "choked down," and after three or four minutes the defendant got out of the vehicle. At that point, the victim walked the defendant to the front of the vehicle, where he held him at gunpoint for approximately thirty-five to forty-five minutes while he waited for officers to arrive.

The victim testified that the defendant was well-lit by the truck's headlights and was at times as near as three or four feet from him. The defendant was dressed in black pants, a black jacket with a "Dale Earnhardt" logo on the back, and a black cap and kept putting his hand on a screwdriver he had in his jacket pocket. The victim said that the defendant asked him why he "was doing him [that] way," offered to "fix" his truck, and kept stating, as if he were a lawyer, that the victim could not shoot him. The defendant refused to comply with the victim's instructions to lie on the ground, would not stand still, and eventually ran off before the police responded to the scene.

The victim further testified that at approximately 10:30 p.m., while he and his girlfriend were still holding the defendant at gunpoint, another man dressed in a camouflage jacket and cap walked past them down the street. According to the victim, the area was remote and "nobody just walks down the street at that hour of the night." On cross-examination, he acknowledged that he did not provide a description of the defendant's facial features in his statement to police. He further acknowledged that he was angry and upset during his encounter with the defendant. He insisted, however, that he got a good look at him from all angles. On redirect examination, he made a positive courtroom identification of the defendant as the perpetrator, expressing absolute certainty in his identification.

Travis Burford, the victim's neighbor, testified that on the night of December 16, 2007, he and his wife were returning home from church sometime between 10:00 and 10:30 p.m. when they saw two Caucasian men they did not recognize walking down the street in front of the victim's home.

Detective Scottie DeLashmit of the Tipton County Sheriff's Office, who was assigned to investigate the case, testified that by the time he arrived at the scene shortly before midnight on December 16, 2007, patrol officers had already taken into custody a person of interest in the case, Jimmy Lee Arnold, Jr. When he interviewed him the next day, Arnold gave the following statement, which was admitted into evidence and read to the jury at trial:

Sunday night I left my house walking with [the defendant]. We went walking down the road. He entered a yard with a bunch of stuff like cars, big truck and junk. He went up there and tried to get into a truck. He told me he was going to get him a ride. I told him that I ain't got nothing to do with that, you're on your own. I would advise against it, but do your thing. I kept walking and never got off the road. I went down the road and heard noises and yelling. I turned around and walked back. I saw [the defendant] being held at gunpoint. A lady asked me who I was and then I asked her who was she. She asked if I was with him, I told her no. I kept walking. I stayed on the road and the cops picked me up. If I was guilty I would have gone in the woods. You can look on my record and see I ain't no theif [sic], I got some agg [sic] assaults and 1 robbery when . . . I was young.

Based on Arnold's information, Detective DeLashmit prepared photographic spreadsheets from which the victim and Jones each positively identified the defendant as the perpetrator on December 21, 2007. The identifications took place separately, and Detective DeLashmit employed the "scramble feature" of his computer to ensure that the defendant's photograph occupied a different position on the spreadsheet viewed by the victim from the position it occupied on the spreadsheet viewed by Jones. Detective DeLashmit testified that the distance from the victim's home to the home of the defendant's mother, where the defendant reported he was living on February 20, 2007, was approximately 1.6 miles.

On cross-examination, Detective DeLashmit testified that Arnold, who was being detained on an investigative hold, was released from custody the day after he gave his statement.

The defendant elected not to testify but presented two witnesses in his behalf: Stephanie Light, who was his girlfriend and the mother of his daughter, and Jimmy Lee Arnold, Jr. Light testified that the defendant, who lived with her at her Bartlett apartment, was home with her and her son on December 16, 2007. She was able to recall the date because she worked six days a week during the Christmas season, which meant that she and the defendant used Sundays, her only day off, as their "family day." Light said that she was two months pregnant at that time and that they "pretty much stayed at home" on her day off during the first trimester of her pregnancy. She also stated that, to her knowledge, the defendant did not have a black hat, black "Intimidator" or "Dale Earnhardt" jacket, or black jeans.

Jimmy Lee Arnold, Jr. testified that the man he saw being held at gunpoint at the victim's residence on December 16, 2007, was not the defendant. He said he signed his statement because the detectives told him they "knew [the perpetrator] was [the defendant]"

-4-

and that they would release Arnold if he cooperated. Arnold stated that he had lived with the defendant's family, knew the defendant, and would have recognized him had he been the man he had seen. He said that his trial testimony was the truth and that his statement to the police was "a total lie." On cross-examination, he testified that he was currently serving a seven-year sentence for attempted aggravated robbery.

## ANALYSIS

The defendant contends on appeal that the evidence was insufficient to sustain his conviction. Specifically, he challenges the evidence of his identity as the perpetrator, arguing that the identifications by Gary Madison and Tresha Jones were weak while the testimony of his alibi witness, Stephanie Light, was very credible. In support, he points, *inter alia*, to Light's testimony that he did not own the various items of clothing worn by the perpetrator, the fact that Madison did not provide any description of the perpetrator's face in his statement to police, and the differences between Jones's description of the perpetrator and the appearance the defendant presented at trial. The State argues that the evidence was more than sufficient to establish the defendant's identity as the perpetrator of the offense. We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a

written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

We conclude that the evidence was more than sufficient to establish the defendant's identity in this case. The victim and his girlfriend had ample opportunity to view the defendant at close range during the fairly lengthy period of time they held him at gunpoint, and both identified him as the perpetrator from the photographic arrays they were separately shown by the police. In addition, each was unequivocal in his or her courtroom identifications. A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. See State v. Hill, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). By its verdict, the jury obviously disagreed with the defendant's contention that the identification testimony of the victim and his girlfriend was "weak," or that the defendant's alibi witness was more credible than the State's witnesses. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction.

## CONCLUSION

Based on our review, we conclude that the evidence was more than sufficient to sustain the defendant's conviction for burglary of a vehicle. Accordingly, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE